UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
TRACY PINKNEY,                      )
                                    )
           Petitioner,              )
                                    )
    v.                              )    Civil Action No. 08-2044 (RMC)
                                    )
UNITED STATES OF AMERICA, *et al.*, )
                                    )
           Respondents.             )
_____ )

MEMORANDUM OPINION

This matter is before the Court on the motion to dismiss filed on behalf of the United States and an opposition filed by petitioner Tracy Pinkney ("Pinkney"). For the reasons discussed below, the motion will be granted and the petition will be denied.

## I. BACKGROUND

*Criminal Charges, Conviction, and Sentence*

On April 2, 1996, in the 4600 block of A Street, S.E., Pinkney and Darryl Curry approached three men, pulled handguns, and during this encounter, Pinkney shot and killed Phillip Baldwin ("Baldwin"). *See* Resp't's Mot. to Dismiss Pet. for a Writ of Habeas Corpus ("Gov't Mot.") [Dkt. # 28] at 6–7. In an indictment filed on August 6, 1996, *id.* at 2, Pinkney "was charged with first-degree premeditated murder while armed, first-degree felony murder while armed, conspiracy to commit robbery, attempted robbery, two counts of assault with a dangerous weapon (ADW), and two firearms offenses." *Pinkney v. United States*, 851 A.2d 479, 482 (D.C. 2004). The

1

conspiracy charge was dismissed before the trial, *id.*, which took place between September 10, 1997, and October 2, 1997, in the Superior Court of the District of Columbia. Gov't Mot., Ex. B (Order, *United States v. Pinkney*, Case No. F-2830-96 (D.C. Super. Ct. June 6, 2001)) at 2. Pinkney's motion for judgment of acquittal on the armed robbery and felony murder charges was granted at the close of the Government's case. *Pinkney*, 851 A.2d at 482. "The jury found [Pinkney] guilty of ADW and second-degree murder while armed, as a lesser included offense of the remaining first-degree murder charge, but acquitted him on all the remaining counts of the indictment." *Id.*; *see* Pet. for a Writ of Habeas Corpus ("Pet.") [Dkt. # 1] at 3. The Superior Court imposed a prison sentence of 40 to 120 months for ADW, and a consecutive sentence of 20 years to life for second-degree murder while armed. Gov't Mot., Ex. A (Judgment and Commitment Order, *United States v. Pinkney*, Case No. F-2830-96 (D.C. Super. Ct. Dec. 2, 1997)).

*Pre-Trial Disqualification of Trial Counsel*

"Ten days after he was indicted, [Pinkney] retained an attorney, Douglas Wood, to represent him." *Pinkney*, 851 A.2d at 484. On October 2, 1996, the Government moved to disqualify counsel, Gov't Mot. at 2, based on Douglas Wood's ("Wood") representation of David Henderson ("Henderson"), a potential rebuttal witness for the Government, *id.* at 11. Wood "had previously represented . . . Henderson in an unrelated criminal matter, and at the time the government filed its motion, . . . Wood was representing him in a case in the United States District Court that was scheduled for sentencing, as well as an upcoming trial in the Superior Court." *Pinkney*, 851 A.2d at 484. "[T]he government's concern was that information . . . Wood had gleaned from his representation of Henderson would be relevant to . . . Wood's cross-examination of Henderson." Gov't Mot. at 11.

2

At a hearing on October 9, 1996, the Government proffered that Henderson met a person who allegedly had paid Pinkney to kill Baldwin. Gov't Mot. at 11. Further, the Government proffered that Henderson later had contact with Pinkney, and that Pinkney "indicated that indeed he had killed [Baldwin]" although Pinkney's version of events differed from the Government's case. *Id.* In addition, the Government proffered:

> [Pinkney] . . . was afraid that the codefendant, Mr. Curry, was going to cut a deal with the Government and that at the suggestion of Mr. Wood, . . . get Mr. Curry his own attorney. Mr. Pinkney indicated that he, in fact, paid Mr. Wood and had paid [another attorney] to represent Mr. Curry in an effort to keep Mr. Curry quiet, so he would not cooperate with the Government. [T]he Government [was] in possession of a letter written by Mr. Pinkney to Mr. Henderson where [Mr. Pinkney] indicates . . . how [Mr. Curry's attorney, Mr. Curry, Mr. Wood and himself] met to try to strategize the best way to handle this case, . . . in an effort again to keep Mr. Curry quiet and to try to beat the charge[.]

*Id.* The Government proposed to use Pinkney's "admitted involvement in the homicide [as] evidence . . . at trial." *Id.*

Wood notified the court that he was withdrawing from his representation of Henderson and that Henderson should be appointed new counsel. *Id.* at 12. He suggested that the court "conduct a hearing to see if any attorney-client privilege would be violated by . . . Wood's continued representation of . . . [Pinkney]." *Id.* Wood argued "that perhaps Henderson was not really a witness, that the court had no information about how he became a witness, and that Pinkney claimed Henderson did not know anything about the case." *Id.* Wood proposed that the court could determine the nature of Henderson's testimony at a hearing, assess Henderson's credibility, determine whether Wood could effectively cross-examine Henderson about his testimony without addressing matters regarding his prior representation of Henderson, and inquire as to whether

3

Henderson would waive any objection to Wood's disclosure of prior confidences. *Id.* If Henderson were not called to testify, Wood's disqualification would mean that Pinkney would be denied his chosen counsel. *See id.*

The court determined that Pinkney had "a Sixth Amendment right to counsel of his choice, . . . a right to conflict-free representation and . . . vigorous representation by someone without . . . restraints on [his] ability to do a thorough and effective cross-examination of a witness called against him." *Id.* Further, the court acknowledged Henderson's "right not to have any of his confidences exposed." *Id.* at 13. Although Pinkney expressed his willingness to waive any conflict of interest, the court found that Pinkney could not possibly effect a knowing and intelligent waiver of confidentiality without knowing exactly what Henderson's testimony would be:

> [Henderson] . . . could agree to have Mr. Wood free to take advantage of his knowledge of him in cross-examination . . . if Mr. Wood not only knew what the testimony was going to be about and therefore was able to decide in advance what kinds of things would be used in cross-examination and that very disclosure would . . . require the Government to disclose something that [it doesn't] have to disclose but it would . . . emasculate any cross-examination if you told the witness in advance what you'll be using and that would be clearly unfair to Mr. Pinkney.

*Id.* According to Pinkney, Henderson's testimony would be a "total fabrication [which] would indeed require vigorous and aggressive cross-examination." *Id.* And "it would not be fair to . . . Pinkney to have his cross-examination cut short and it would not be fair to [Henderson] to have that cross-examination done by someone" with whom he had shared confidences. *Id.* In short, the court did not believe the case could proceed with Wood's continued participation. *Id.* Justice required Wood's withdrawal and an opportunity for Pinkney to choose new counsel. *Id.* "A new attorney later entered an appearance for [Pinkney]," and after this attorney "and two successors were allowed

4

to withdraw for various reasons, a sixth attorney (Wood had been the second) entered the case and represented [Pinkney] through the trial and sentencing." *Pinkney*, 851 A.2d at 485.

During *voir dire* on the first day of trial on September 11, 1997, defense counsel learned that Henderson did not appear on the Government's witness list. *See Pinkney*, 851 A.2d at 490; *see* Pet. at 7. Defense counsel promptly "moved to stay the proceeding, strike his own appearance as counsel, and reinstate . . .Wood as defense counsel." *Pinkney*, 851 A.2d at 490. If the motion had been granted, it "would have necessitated a delay in the trial," principally because "Wood had had no contact with the case for several months." *Id.*[1] The court denied the motion, *id.*, "mainly because the litigants were sort of in the middle of trial and because . . . Wood's successor counsel was finally prepared and ready for trial." *Id.* at 491 (internal quotation marks omitted). As stated previously, the trial resulted in Pinkney's conviction for ADW and second degree murder while armed.

*Post-Conviction Proceedings in the District of Columbia Courts*

On October 14, 1997 and on January 12, 1998, Pinkney filed motions under D.C. Code § 23-110 to vacate his sentence. Gov't Mot. at 3. These and his various supplemental filings were considered and denied on June 6, 2001. *See id.*, Ex. B. The court rejected Pinkney's claim of ineffective assistance of trial counsel based on counsel's alleged failure to cross-examine

---

[1] The case initially was set for trial on February 24, 1997. Gov't Mot., Ex. C (Transcript, *United States v. Pinkney*, Case No. F-2380-96 (D.C. Super. Ct. Nov. 1, 2004)) at 164:18-19. The court granted defense counsel's unopposed request for a continuance, and the trial was then set to begin on May 6, 1997. *Id.* at 165:5–9. On the day the trial was set to begin, successor counsel was allowed to withdraw because she credibly believed that Pinkney had threatened her, *id.* at 165:8–24, and the case was continued until September 1997, *id.* at 166:2-4. Accordingly, as of the September 1997 trial commencement date, there had already been two significant continuances. *Id.* at 166:3–9. Had Wood been reinstated, "the case would have been continued at a point when everybody was there and ready for trial." *Id.* at 166:6–9.

5

witnesses effectively, *see id.* at 4–10, failure to call other witnesses, *see id.* at 10–13, and "a major tactical disagreement," *id.* at 13, with regard to counsel's chosen argument in his closing, *see id.* at 13–14. Pinkney filed a timely notice of appeal, Gov't Mot. at 3, and on June 17, 2004, the District of Columbia Court of Appeals affirmed the denial of his § 23-110 motion and rejected the remaining motions except one raising the question of whether the trial court should have permitted Wood to resume his representation of Pinkney when it appeared that the conflict of interest which had disqualified him had been resolved. *See Pinkney*, 851 A.2d at 491. While "leav[ing] the details of the remand proceedings to the discretion of the trial court," *id.* at 492, the Court of Appeals set forth the trial court's task on remand:

> [I]f the court concludes that . . . Wood would not have re-entered the case when [Pinkney] moved to reinstate him as counsel, then the judgment of conviction shall stand affirmed. But if the court finds that . . . Wood was willing and able to represent [Pinkney] after learning that Henderson would not be a witness, and if the court can be assured that there would be no risk that Henderson's rights would be infringed by Wood's renewed representation of [Pinkney], it shall vacate the judgment and order a new trial.

*Id.* (internal quotation marks and footnote omitted).

On remand, the Superior Court held an evidentiary hearing, *see* Gov't Mot., Ex. C (Transcript, *United States v. Pinkney*, Case No. F-2380-96 (D.C. Super. Ct. Nov. 1, 2004)), during which the prosecutor, Henderson, Henderson's attorney, and Wood testified, *see* Gov't Mot. at 14. The court concluded that "Henderson still was a potential rebuttal witness," *id.*, Ex. C at 158:18, and, therefore, "the premise of [Wood's] disqualification continued and remained in effect as of the time of trial." *Id.* at 162:8–10.

6

Even if Wood had been reinstated as Pinkney's counsel, the judge found that Wood had been unable to re-enter the case on the eve of trial. The court did not believe that Wood "was ready to try [the case] right away," Gov't Mot., Ex. C at 162:24–15, but rather "would have asked for a continuance," *id*. at 162:25 to 163:1, as would "any criminal defense lawyer in his situation," *id.* at 163:12–13. The charge was first degree murder, and the case was "fairly complex," *id.* at 163:18, such that "it would have been completely appropriate for a . . . lawyer who had not had any contact with the case for 11 months if [he were] brought in to say [he] needed some additional time," *id.* at 163:18–21. Addressing the factors set forth in *Leak v. United States*, 757 A.2d 739, 744–45 (D.C. 2000), the court made additional findings which militated against Wood's reinstatement and the supported need, had Wood been reinstated, for a continuance. There had already been significant continuances granted at points where all parties were prepared for trial (at least one of which was attributed to Pinkney's dissatisfaction with previous appointed counsel), so that another continuance would result in inconvenience to the litigants, witnesses and the court, prejudice flowing from yet another continuance, and that the complexity of the case would have necessitated another continuance. *See* Gov't Mot., Ex. C at 164:4 to 170:3. The court thus found that "the reason for Mr. Wood's disqualification continued as of September of [1997]," *id.* at 170:6–7, providing no basis to disturb the conviction.

Pinkney filed a timely notice of appeal, and Jonathan Willmott ("Willmott") was appointed to represent him before the District of Columbia Court of Appeals. *See* Gov't Mot., Ex. I (Brief for Appellant, *Pinkney v. United States*, No. 04-CO-1501 (D.C. Ct. of App. filed Aug. 23, 2005)) at 3. Willmott framed the question on appeal as follows:

> Whether [Pinkney's] original attorney [Wood] should have been reinstated since the lawyer unequivocally said he would have re-entered the case, the so-called rebuttal witness [Henderson] was not really a potential rebuttal witness, and the other factors suggested the appropriateness of honoring [Pinkney's] right to chosen counsel.

*Id.*, Ex. I at *iv*. Willmott argued that the case "present[ed] a mixed question of fact and law." *Id.* at 25. Citing cases focusing on a criminal defendant's Sixth Amendment right to counsel of his choice, *see, e.g., Wheat v. United States*, 486 U.S. 153, 164 (1988), *Yancey v. United States*, 755 A.2d 421, 425 (D.C. 2000), appellant counsel urged reversal of Pinkney's conviction "so that Wood . . . can try the case," Gov't Mot., Ex. I at 35. The Government responded that the trial court's decision to deny Pinkney's request for a new trial could be reversed only for abuse of discretion, *id.*, Ex. K (Brief for Appellee, *Pinkney v. United States*, No. 04-CO-1501 (D.C. Ct. App. filed Oct. 20, 2005)) at 25, a position Pinkney opposed in a reply brief. *See generally id.*, Ex. J.

> The Court of Appeals affirmed the Superior Court's decision:
>
> A motion for reinstatement of previously disqualified counsel implicates a defendant's Sixth Amendment right to counsel of one's own choosing. *See* [*Pinkney*, 852 A.2d] at 490. However, this right is not absolute. Although there is a presumption in favor of a defendant's choice of counsel, "that presumption may be overcome . . . by a showing of a serious potential for conflict." *Wheat v. United States*, 486 U.S. 153, 164 (1988). Here, after a full hearing on remand, the trial court found that there remained "a very strong possibility" that the government could call Henderson as a rebuttal witness (which did not have to be shown on the witness list). Appellant takes issue with this finding as a factual matter, but "[t]his court accepts the trial court's findings of fact unless they lack evidentiary support." *Veney v. United States*, 738 A.2d 1185, 1193 (D.C. 1999). This finding is based on ample support in the record here and is determinative where no other circumstances are demonstrated which would dissipate the factors indicating a serious potential of conflict discussed in the first appeal.

8

*Id.*, Ex. D (Memorandum Opinion and Judgment, *Pinkney v. United States*, Case No. 04-CO-1501 (D.C. Ct. App. Oct. 25, 2006) (per curiam)). The petition for rehearing or rehearing *en banc* was denied. *Id.*, Ex. E (Order, *Pinkney v. United States*, Case No. 04-CO-1501 (D.C. Ct. App. Jan. 16, 2007) (per curiam)). His petition to recall the mandate, in which he alleged ineffective assistance of appellate counsel, also was denied. *Id.*, Ex. F (Order, *Pinkney v. United States*, Case No. 04-CO-1501 (D.C. Ct. App. Apr. 6, 2007) (per curiam)).

Undaunted, Pinkney filed another § 23-110 motion in the Superior Court claiming ineffective assistance of appellate counsel. Gov't Mot., Ex. G (Pet. for Writ of Habeas Corpus, Case No. 1996 FEL 2830 (D.C. Super. Ct. Apr. 2, 2008)) at 6. The court denied the motion, acknowledging that "a claim for ineffective assistance of appellate counsel cannot be heard in the trial court." *Id.*, Ex. H (Order, *United States v. Pinkney*, Case No. F-2380-96 (D.C. Super. Ct. Aug. 29, 2008)) at 2.

### E. Allegations of the Petition for a Writ of Habeas Corpus

Pinkney files this petition under 28 U.S.C. § 2241. Pet. at 1. He alleges that the Superior Court erred by disqualifying Wood based on a conflict of interest, and by refusing to reinstate Wood after the conflict had been resolved. *See id.* at 5–8. Pinkney further alleges that the District of Columbia Court of Appeals erred in remanding the matter to the Superior Court for the purpose of determining whether Wood could have reentered the case, rather than reversing his conviction. *See id.* at 8–9. Lastly, Pinkney raises a claim of ineffective assistance of appointed appellate counsel, evidenced by (1) Willmott's concession during the oral argument that Henderson was a potential government witness, *see id.* at 10, and (2) his argument using an incorrect legal standard for appellate review, *see* Pet'r's Mot. to Supplement Pet. for a Writ of Habeas Corpus [Dkt.

9

#12] at 2–4. Pinkney asks this Court to reverse the District of Columbia courts' rulings and to vacate his criminal convictions. *See* Pet. at 10.

## II. DISCUSSION

### *A. Timeliness*

A federal district court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Respondent argues that the petition, although filed under 28 U.S.C. § 2241, properly is considered a petition of a state prisoner under 28 U.S.C. § 2254, based on D.C. Circuit precedent that a person in custody pursuant to a judgment and conviction of the Superior Court of the District of Columbia is considered a state prisoner for at least one purpose.[2] *See Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308–10 (D.C. Cir. 2002) (concluding that "a court of the District is a state court for purposes of [28 U.S.C. §] 2253(c)"); *Garris v. Lindsay*, 794 F.2d 722, 724 n.8 (D.C. Cir. 1986) (per curiam) (finding that a petitioner sentenced in the Superior Court of the District of Columbia who filed habeas petition under 28 U.S.C. § 2241 was a state prisoner for purposes of certificate of appealability requirement under 28 U.S.C. § 2253).

A petition under 28 U.S.C. § 2254 must be filed within a one-year limitations period, 28 U.S.C. § 2244(d)(1), calculated as follows:

---

[2] The district court is authorized to grant a writ of habeas corpus to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A prisoner who is "in custody pursuant to the judgment of a State court" may seek habeas relief in a federal district court on these grounds, *see id*. § 2254(a), but first he must either "exhaust[] the remedies available in the courts of the State," *id*. § 2254(b)(1)(A), if there are available remedies or show that "circumstances exist that render such process ineffective to protect [his] rights." *Id*. § 2254(b)(1)(B)(ii).

10

> The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id*. § 2244(d)(1). The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id*. § 2244(d)(2).

According to Respondent, Pinkney's convictions became final on April 16, 2007, the date on which the time to file a petition for a writ of certiorari in the Supreme Court of the United States from the denial of his motion for rehearing or rehearing *en banc* by the District of Columbia Court of Appeals expired. Gov't Mot. at 29. The deadline for filing the instant petition, absent a basis for tolling the limitations period, thus would have fallen on April 16, 2008. *Id.* at 30. Alternatively, factoring in the filing of the § 23-110 motion Pinkney signed and dated March 24, 2008 (which the Clerk of Court filed on April 2, 2008 and the Superior Court denied on August 29, 2008), as tolling the one-year limitations period under 28 U.S.C. § 2244(d)(2), Respondent believes that the deadline was extended to September 20, 2008. *Id.* Pinkney signed and mailed this federal

11

habeas petition on October 8, 2008 (which the Clerk of Court filed on November 19, 2008), after the one-year limitations period expired.

    Judges on this and other federal district courts have concluded that persons serving sentences imposed by the Superior Court of the District of Columbia are state prisoners for purposes of 28 U.S.C. § 2244. *See Williams v. Apker*, Civ. No. 10-0522, 2011 WL 1118497, at *1 n.1 (D.D.C. Mar. 28, 2011) ("Because . . . the petitioner is in custody pursuant to a judgment of the D.C. Superior Court, which is considered a state court, the court construes the petition as made under 28 U.S.C. § 2254, the federal law governing petitions for writs of habeas corpus filed in federal courts by state prisoners."); *Davis v. Cross*, Civ. No. 10-761, 2011 WL 1119650, at *2 (D.D.C. Mar. 27, 2011) ("Because Petitioner is in custody pursuant to a judgment of a state court, he makes his petition under 28 U.S.C. § 2254."); *Moorer v. Quintana*, No. CV 10-0908, 2010 WL 5670919, at *3 (C.D. Cal. Dec. 29, 2010) (Magistrate Report and recommendation to dismiss habeas petition filed by a D.C. Code offender as untimely under 28 U.S.C. § 2241(d)(1)), *adopted*, 2011 WL 318140 (C.D. Cal. Jan. 26, 2011); *Banks v. Smith*, 377 F. Supp. 2d 92, 93 (D.D.C. 2005) (considering petitioner who was sentenced by a judge sitting by designation of the District of Columbia Court of Appeals a state prisoner); *see also James v. Smith*, No. 1:08-cv-01325, 2008 WL 5329954, at *3 (E.D. Cal. Dec. 19, 2008) (concluding that, even if the federal district court had jurisdiction to entertain the habeas petition of a D.C. Code offender, it was time-barred under 28 U.S.C. § 2244(d)(1)); *Williams v. Smith*, No. 1:08-CV-0535, 2008 WL 4057859, at *2 (E.D. Cal. Aug. 28, 2008) (same); *but see Wright v. Stansberry*, 677 F. Supp. 2d 286, 287 n.2 (D.D.C. 2010) (stating that "[t]he provisions of 28 U.S.C. § 2244(d)(1) and § 2254 do not apply to persons convicted and sentenced in the Superior Court for the District of Columbia"). There appears to be no controlling authority for the proposition

12

that a person challenging a Superior Court conviction or sentence is subject to the one-year limitations period set forth in 28 U.S.C. § 2244(d). The Court presumes without deciding that the petition was timely filed.

### B. Claims of Error by the District of Columbia Courts

Under District of Columbia law, a prisoner convicted and sentenced in the Superior Court may file a motion in that court to vacate, set aside, or correct his sentence "upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, [or] (4) the sentence is otherwise subject to collateral attack." D.C. Code § 23-110(a). Although habeas relief in federal court is available to a District of Columbia Code offender who "is in custody in violation of the Constitution . . . of the United States," 28 U.S.C. § 2241(c)(3), his habeas petition "shall not be entertained by . . . any Federal . . . court if it appears that the [petitioner] has failed to make a motion for relief under [D.C. Code § 23-110] or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."[3] D.C. Code § 23-110(g); *see also Byrd v. Henderson*, 119 F.3d 34, 36–37 (D.C. Cir. 1997) (finding that "a District of Columbia prisoner has no recourse to a federal judicial forum unless the local remedy is inadequate or ineffective to test the legality of his detention").

"It is well-established that the mere denial of relief by the local courts does not render the local remedy inadequate or ineffective." *Joyner v. O'Brien*, Civ. No. 09-0913, 2010 WL 199781,

---

[3] The phrase "'[r]emedy by motion' plainly refers to motions filed pursuant to section 23-110(a)." *Williams v. Martinez*, 586 F.3d 995, 998 (D.C. Cir. 2009), *cert. denied*, 130 S. Ct. 2073 (2010).

at *2 (D.D.C. Jan. 15, 2010) (citations omitted); *see Corley v. U.S. Parole Comm'n*, Civ. No. 08-1342, 2009 WL 2606554, at *3 (D.D.C. Aug. 26, 2009) (citing *Garris*, 794 F.2d at 727); *see also Morton v. United States*, Civ. No. 07-5253, 2008 WL 4726051, at *1 (D.C. Cir. June 12, 2008) (per curiam) (denying request for certificate of appealability on the ground that appellant "may not challenge his District of Columbia convictions in federal court unless his remedy under D.C. Code § 23-110 is inadequate or ineffective to test the legality of his detention . . . , and [t]he § 23-110 remedy . . . is not considered inadequate or ineffective simply because the requested relief has been denied").

Pinkney vigorously has contested his conviction and sentence, both in the Superior Court by filing motions under D.C. Code § 23-110 and by appealing unfavorable rulings to the D.C. Court of Appeals. His allegations of error by the Superior Court properly were raised in and decided by the Court of Appeals, and this Court is without jurisdiction to review or overturn these rulings. In short, Pinkney cannot avail himself of this federal forum merely because his prior attempts to challenge his conviction and sentence in the District of Columbia courts have not been successful.

*C. Ineffective Assistance of Appellate Counsel*

Pinkney may bring a claim of ineffective assistance of appellate counsel in federal district court. *See Williams v. Martinez*, 586 F.3d 995, 998–99 (D.C. Cir. 2009), *cert. denied*, 130 S. Ct. 2073 (2010). In assessing such a claim, the Court applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),[4] which in the appellate context has been described as follows:

---

[4] Under *Strickland*, a petitioner claiming ineffective assistance of trial counsel must show:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious
>
> (continued...)

> [Petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citations omitted); *see Williams*, 683 F. Supp. 2d at 32 ("To show ineffective assistance of appellate counsel, [petitioner] must show that his appellate counsel's performance was (1) deficient and (2) prejudiced his defense such that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal quotation marks and citation omitted).

Pinkney ably articulates the elements of an ineffective assistance of appellate counsel claim, *see, e.g.,* Pet. at 4; Pet'r's Reply Mot. to Resp't's Mot. to Dismiss Pet'r's Writ of Habeas Corpus ("Pet'r's Reply") [Dkt. # 29] at 25–26, yet his complaints about Willmott's performance do not pertain to an unreasonable failure to identify and to argue non-frivolous issues on appeal or any prejudice Pinkney may have suffered because of Willmott's alleged errors. Pinkney's second appeal presented only one issue: whether Wood was able to represent Pinkney when the trial commenced in September 1997. Willmott's appellate brief articulated reasons why Wood should have been

---

[4](...continued)
> that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

reinstated, based not only on Wood's testimony regarding his availability and willingness to resume representation, but also on Pinkney's Sixth Amendment right to counsel. *See generally* Gov't Mot., Ex. I. The brief also challenged the trial court's conclusion that a conflict of interest existed at the time Pinkney's trial began. *See id.* at 27–31. It cannot be said that Willmott's identification of appealable issues was somehow deficient.

According to Pinkney, Willmott erred by conceding a factual matter at oral argument – that Henderson remained a potential rebuttal witness for the government – and in effect, by admitting the existence of a conflict of interest barring Wood's reinstatement. *See* Pet'r's Reply at 21–23. Pinkney asserts that the Superior Court's ruling was "erroneous and not supported by the record," *id.* at 17; *see also id.* at 19, in light of the testimony presented by Wood, Henderson and Henderson's attorney. *See id.* at 4–10. If Willmott had relied on their testimony and argued in favor of application of the "clearly erroneous" standard of review, Pinkney asserts, "the record already established on the remand hearing . . . would have gained a reverse [sic] with the evidence presented." *Id.* at 26.

The pertinent exchange at oral argument proceeded as follows:

> JUDGE: Well, doesn't everything turn on a factual finding that the trial judge made, namely the factual finding that Henderson would have been a potential government witness? If that factual finding stands, doesn't everything else follow?
>
> MR. WILLMOTT: No. I do not think so because of two things. The question of whether Henderson would be a government witness, there's no doubt that the trial court was correct in that Henderson was a potential government witness, a potential rebuttal witness. But I think that the appellate court –
>
> JUDGE: So you concede that fact?

16

| | |
|---|---|
| MR. WILLMOTT: | Yes. That he was a potential witness. |
| JUDGE: | What you found, though, was there a very strong possibility. That's the factual finding. There was a very strong possibility. That's the factual finding. There was a very strong possibility that Henderson would be a rebuttal witness. |
| MR. WILLMOTT: | That's where I believe that the Court erred because – |
| JUDGE: | Erred or there is no substantial evidence to support that? |
| MR. WILLMOTT: | Well, I don't think there was substantial evidence either because – |
| JUDGE: | I mean, that's a factual finding. It's not a legal issue. It's just was there a strong possibility or not. And the trial court I thought had assumed from the testimony of government counsel, which I assume she could credit, that there was a very strong possibility. Is that – do I have it wrong? |
| MR. WILLMOTT: | Well, essentially the Court could look at the testimony but it also had to look at the facts, and the facts were that Henderson was not (inaudible), Henderson was not (inaudible) in. Henderson would have been an uncooperative witness. |
| JUDGE: | Your argument is that the finding was clearly erroneous? |
| MR. WILLMOTT: | That's one of my arguments. |
| JUDGE: | But if it's not clearly erroneous, doesn't that really resolve the issue before us? |
| MR. WILLMOTT: | No. Because I think the Court has to still revisit that issue because the standard – I believe it's a de novo standard. |

Gov't Mot., Ex. L (excerpt of transcript of oral argument on September 16, 2006) at 4:7 to 6:1.

Contrary to Pinkney's assertions, Willmott not only argued that the trial judge's findings were clearly erroneous, but also attempted to expand the scope of the Court of Appeals's review.

17

If, as Pinkney insists, the Court of Appeals limited itself to a "clearly erroneous" standard, it would not disturb the trial court's findings of fact as long as they were supported by evidence in the record. *See Veney*, 738 A.2d at 1193. The relevant factual finding here was that Henderson remained a potential rebuttal witness for the government. It followed that the conflict of interest persisted, barring Wood's reinstatement as Pinkney's defense counsel. If the Court of Appeals were to conduct a *de novo* review, however, Pinkney would have benefitted from a fresh consideration of Wood's disqualification. In this scenario, the Court of Appeals could have made its own findings of fact based on the record before the trial court. If it were to conclude that Henderson was not a potential rebuttal witness, that Wood was willing and able to resume his representation of Pinkney, and that Henderson's rights would not be infringed thereby, the Court of Appeals could have vacated the judgment and ordered a new trial. In short, *de novo* review of Henderson's status as a potential rebuttal witness offered Pinkney a better chance of success on appeal, and Willmott argued for *de novo* review.

The Court of Appeals concluded that the trial court conducted "a full hearing on remand, [and] found that there remained a very strong possibility that the government could call Henderson as a rebuttal witness (which did not have to be shown on the witness list)." Gov't Mot., Ex. C (Memorandum Opinion and Judgment, *Pinkney v. United States*, No. 04-CO-1501 (D.C. Ct. App. Oct. 25, 2006)) at 1 (internal quotation marks omitted). Pinkney took "issue with the finding as a factual matter, but [the Court of Appeals] 'accepts the trial court's findings of fact unless they lack evidentiary support.'" *Id.* (quoting *Veney*, 738 A.2d at 1193). The Court of Appeals found, and this Court concurs, that the trial judge's "finding is based on ample support in the record . . . and

is determinative where no other circumstances are demonstrated which would dissipate the factors indicating a serious potential of conflict." *Id.* at 1–2 (footnote omitted).

### III.  CONCLUSION

Pinkney's claims of trial court error are matters which have been properly raised in the Superior Court by motion under D.C. Code § 23-110 and reviewed by the District of Columbia Court of Appeals.  Pinkney has not demonstrated any error on the part of his appellate counsel, let alone an error of such severity that it caused him to lose his appeal.  Therefore, his claim of ineffective assistance of appellate counsel must fail.  For these reasons, the Petition for a Writ of Habeas Corpus [Dkt. # 1] will be denied, Respondent's Motion to Dismiss the Petition for a Writ of Habeas Corpus [Dkt. # 28] will be granted, and this civil action will be dismissed.  A memorializing Order accompanies this Memorandum Opinion.

Date: August 9, 2011

/s/
ROSEMARY M. COLLYER
United States District Judge